UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| SAMUEL MCALISTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 20-1100-JDT-cgc |
| | ) | |
| STATE OF TENNESSEE, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER DISMISSING COMPLAINT AND GRANTING LEAVE TO AMEND

On May 6, 2020, Samuel McAlister, a prisoner acting *pro se*, filed a civil complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) He filed a motion to proceed *in forma pauperis* on June 11, 2020. (ECF No. 4.) The Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 5.) McAlister has sued the State of Tennessee; Chester Long, identified as an administrator at the Madison County Criminal Justice Complex (CJC) in Jackson, Tennessee; Greg Gookin, Assistant Public Defender; and Bradley Champine, Assistant District Attorney (ADA).

McAlister alleges he was required to "serve a sentence that I had already served of 11/29, Doc #18-243[.]" He asserts his lawyer, Defendant Gookin, "let me . . . be [allowed] to re-serve a sentence that knowingly I had served . . . from 08/25/17[,] expired 06/12/18, when Judge Donald H. Allen, had stated in hearing that I . . . [was] to receive credit for my sentence of 11/29—18-243." (ECF No. 1 at PageID 5.) Gookin allegedly went to the CJC and "got copies of proof that I had [done] the 11/29 time served and the Jail would have to credit the 11/29 to my new sentence of 5 years at 30% case 18-501." (*Id.* at PageID 7.) Yet the Defendants allegedly "overlooked &

mostly ignored [the] proof and facts of paper work."[1]  (*Id.* at PageID 4.)  McAlister seeks to have the extra time he served credited to his current sentence and to be awarded $18,000 for lost income he could have earned had he not served that extra time.  (*Id.* at PageID 5.)

In an apparently unrelated claim, McAlister alleges he did not receive proper medical treatment for various conditions, presumably while at the CJC.[2]  He contends (1) he was not given medication needed for his post-traumatic stress disorder (PTSD); (2) he was not given any antibiotics or pain medications for a recent gunshot wound he had suffered even though he "was still bleeding on the inside" at the time, (*id.*); (3) he was not given any high blood pressure medication; and (4) he was not given medication for knee and shoulder damage.  (*Id.*)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

    (1)    is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

    (2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied.  *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).  The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest

---

[1] McAlister states Judge Allen's ruling was made September 3, 2018, but he does not state when he actually became aware his sentence had been miscalculated.

[2] McAlister also does not provide any dates for the alleged denial of medical care.

an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

McAlister filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

3

To the extent McAlister is asking this Court to adjust his state sentence to reflect the credit he contends he is due, the Court cannot do so. When a prisoner seeks to challenge the validity or duration of his confinement, his proper remedy is a petition for a writ of habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *see also Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus.").

Any claim for money damages against the State of Tennessee or against ADA Champine in his official capacity are barred by sovereign immunity.[3] The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Va. Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). Tennessee has not waived its sovereign immunity. *See* Tenn. Code Ann. § 20-13-102(a). Moreover, a state is not a person within the

---

[3] As an ADA, Champine is an employee of the State of Tennessee. *See White v. Swafford v. Gerbitz*, 860 F.2d 661, 663 n.2 (6th Cir. 1988) (noting that district attorneys general and their assistants "prosecute suits on behalf of the state, Tenn. Code Ann. § 8-7-103, and receive an annual salary payable out of the state treasury, Tenn. Code Ann. §§ 8-7-105 and 8-7-201" and therefore are employees of the State of Tennessee); *see also Hembree v. Office of the Dist. Attorney Gen. for the 13th Judicial Dist. of Tenn.*, No. 2:18-cv-00097, 2019 WL 1437913, at *2 (M.D. Tenn. Apr. 1, 2019).

meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Any claims against Defendant Long in his official capacity must be treated as claims against Madison County. Madison County, however, may be held liable under § 1983 *only* if McAlister's injuries were sustained pursuant to an unconstitutional custom or policy. *See Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691-92 (1978). To demonstrate municipal or county liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original)). McAlister does not allege that he was denied proper credit for time served or that he was denied proper medical treatment because of a Madison County policy or custom. He therefore fails to state an official capacity claim against Defendant Long.

In their individual capacities, prosecutors such as ADA Champine generally are entitled to absolute immune from suit for actions taken in initiating and pursuing criminal prosecutions because that conduct is "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976); *see also Howell v. Sanders*, 668 F.3d 344, 351 (6th Cir. 2012) ("A prosecutor's decision to initiate a prosecution, including the decision to file a criminal complaint or seek an arrest warrant, is protected by absolute immunity.").

McAlister's claim against Champine in this case is not entirely clear. He seems to allege Champine was present during the hearing in case number 18-501 at which Judge Allen ruled McAlister was to receive credit for the time served in the previous case, number 18-243. McAlister then states Champine "ignored" the judgment incorporating the Judge's ruling. He does not, however, allege Champine was responsible for calculating the sentence or that it was Champine's responsibility to ensure officials with the CJC and/or the Tennessee Department of Correction calculated the sentence correctly. Indeed, there is no allegation that Champine was even aware McAlister had not been given proper credit for the prior sentence. Moreover, even if Champine knew or should have known McAlister's sentence had been miscalculated, issues concerning the imposition of a sentence are still part of the "judicial phase of the criminal process" for which Champine is entitled to prosecutorial immunity. McAlister thus has no claim against ADA Champine in his individual capacity.

McAlister also has no claim against his defense attorney, Defendant Gookin. Though attorneys employed as public defenders in Tennessee are paid by the State, "public defenders do not 'act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.'" *Powers v. Hamilton Cnty. Public Defender Comm'n*, 501 F.3d 592, 611 (6th Cir. 2007) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981)).

Though the complaint is not entirely clear, McAlister does not appear to allege that Defendant Long had anything to do with his sentence, so the Court presumes McAlister's claim against Long is for lack of medical care. Under *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." For pretrial detainees, however, the right to adequate medical care stems from the Fourteenth Amendment. *See Griffith*

*v. Franklin Cnty., Ky.*, 975 F.3d 554, 566 (6th Cir. 2020).  Though the complaint does not specify whether McAlister was still a pretrial detainee at the relevant time, claims for denial of medical care under both the Fourteenth Amendment and the Eighth Amendment are analyzed under the same legal standards.  *Id.*

An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  The objective component of an Eighth Amendment claim based on a lack of medical care requires that a prisoner have a serious medical need.  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994).

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the defendant acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind."  *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 302-03.  The plaintiff must show that the defendants acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm.  *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009).  "[D]eliberate indifference describes a state of mind more blameworthy than negligence."  *Farmer*, 511 U.S. at 835.  A defendant cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an inmate's health or safety and disregards that risk.  *Id.* at 837.

Here, McAlister's complaint does not state a claim against Long for lack of medical care. There are no allegations setting forth any actions taken by Long that resulted in a denial of medical care.  Moreover, Long is identified as an administrator at the CJC, not an actual medical provider. If McAlister intends to sue Long only as a supervisory official responsible for the conduct of his

subordinates, he must show that Long "encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "At a minimum," McAlister must show that Long "implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates." *Id.*

For all of these reasons, McAlister's complaint is subject to dismissal for failure to state a claim on which relief may be granted.

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court concludes that McAlister should be given the opportunity to amend his complaint.

In conclusion, the Court DISMISSES McAlister's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to amend, however, is GRANTED. Any amendment must be filed within twenty-one days after the date of this order, on or before **February 2, 2021**.

McAlister is advised that an amended complaint will replace the original complaint and must be complete in itself without reference to the prior pleadings. The text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous

document. All claims alleged in an amended complaint must arise from the facts alleged in the original complaint. Each claim for relief must be stated in a separate count and must identify each defendant sued in that count. If McAlister fails to file an amended complaint within the time specified, the Court will dismiss the case with prejudice in its entirety, assess a strike pursuant to 28 U.S.C. § 1915(g), and enter judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE